BILLER ASSOCIATES *v.* RTE. 156 REALTY COMPANY
(AC 16708)

Lavery, Hennessy and Sullivan, Js.

Argued November 2, 1998—officially released February 23, 1999

*Victor J. Dowling*, with whom were *Paige J. Everin*, and, on the brief, *Victor J. Dowling, Jr.*, for the appellant-appellee (defendant).

*David B. Rozwaski*, with whom was *Jon D. Biller*, for the appellee-appellant (plaintiff).

*Opinion*

LAVERY, J. The defendant, Rte. 156 Realty Company, appeals from the judgment of the trial court in favor of the plaintiff, Biller Associates, a licensed public adjusting firm. On appeal, the defendant claims that the trial court (1) failed to respond to its claim that, as a matter of law, the employment contract it signed with the plaintiff was unenforceable, (2) misinterpreted the phrase "or otherwise recovered" in § 38-72 (h)-6, now § 38a-788-6, of the Regulations of Connecticut State Agencies, and (3) improperly determined that the plaintiff was entitled to a percentage of the defendant's settlement from a negligence action involving a third party. We agree with the defendant that the employment contract was unenforceable and, therefore, reverse the

judgment of the trial court. Because we conclude that, as a matter of law, the employment contract was unenforceable, we need not address the defendant's remaining two claims and the plaintiff's cross appeal.

The following facts are relevant to a resolution of this appeal. The plaintiff was at all relevant times a licensed public adjusting firm. The defendant was the owner of premises located at 435 Shore Road in Old Lyme. The defendant leased its building to Robert Gaines, who operated a restaurant on the premises. Paragraph five of the lease agreement required Gaines to obtain replacement fire and extended insurance coverage in an amount not less than $250,000. Using an independent insurance broker, Pequot Insurance Agency (Pequot), Gaines obtained insurance coverage for the premises in the amount of $425,000 from the Hermitage Insurance Company (Hermitage). Contrary to the terms of the lease agreement, the Hermitage insurance policy erroneously listed Gaines as the insured and owner of the property. Before this insurance policy could be reformed to reflect that the defendant was the insured and owner, the premises were destroyed by fire on July 1, 1988.

On August 22, 1988, the defendant signed an employment contract with the plaintiff, authorizing the plaintiff to adjust the loss on its behalf. This contract is the subject of the present action. The plaintiff admitted that when both parties signed this contract, it was fully aware that the defendant was not named as an insured party under the Hermitage insurance policy. The defendant claims that it signed this contract with the expectation that efforts to reform the Hermitage insurance policy would be successful, thereby naming it as the owner and insured of the premises.

Thereafter, the defendant retained legal counsel and initiated a separate lawsuit against Pequot, Hermitage

and Continental Insurance Agency (Continental), the Connecticut agent for Hermitage. The defendant sought, inter alia, to reform the Hermitage insurance policy and claimed that it was not named as an insured party under this policy due to Pequot's negligence. The defendant was unable to reform the Hermitage insurance policy, and eventually settled its lawsuit with Pequot, Hermitage and Continental.

Because the defendant refused to provide the plaintiff with a percentage of the settlement, the plaintiff initiated this action, claiming that, pursuant to the terms of the August 22, 1988 employment contract, it was entitled to 10 percent of the defendant's recovery. In the alternative, the plaintiff claimed that it was entitled to recover under the doctrine of unjust enrichment.

On October 22, 1996, the trial court rendered judgment for the plaintiff in the amount of $17,500 plus costs, which constituted 10 percent of the defendant's net recovery. In its memorandum of decision, the trial court stated that "[t]he defendant did not recover under the [Hermitage] fire insurance policy because attempts at reforming that policy to add it as an insured were not successful." In response to the defendant's claim that the employment contract was unenforceable, the trial court concluded that "[t]his claim appears to have been abandoned [by the defendant] in the posttrial brief." The trial court awarded the plaintiff 10 percent of the defendant's net recovery because the employment contract provided that the plaintiff was entitled to 10 percent of "the amount of the loss when adjusted with the Insurance Companies or otherwise recovered." The trial court concluded "that the term 'otherwise recovered' in this employment contract leaves no room for ambiguity and its plain meaning includes all sums 'received' from an insurance company in recompense for a loss." Additionally, the trial court held that even

if the plaintiff could not recover pursuant to the contract, it was entitled to $17,500 in quantum meruit.

On November 5, 1996, the defendant filed a motion to reargue, and the trial court denied the defendant's motion on November 26, 1996. This appeal followed. Additional facts will be set forth where necessary to a resolution of this appeal.

I

The defendant claims that the trial court failed to respond to its claim that, pursuant to General Statutes (Rev. to 1987) § 38-69 (now § 38a-702) and regulations enacted by the insurance commissioner in effect at the time the contract was executed,[1] the employment contract was unenforceable because, as a condition precedent to its enforceability, the defendant must be named as an insured party under the Hermitage insurance policy sought to be adjusted by the plaintiff. We agree with the defendant and, therefore, reverse the judgment of the trial court.

A

As a threshold matter, we must determine whether the defendant properly raised and preserved this claim for review. The plaintiff argues that this claim "was not raised by the defendant-appellant in its trial brief and has not been raised on this appeal and has therefore been abandoned." In its memorandum of decision, the trial court stated that "[t]his claim appears to have been abandoned in the posttrial brief." We disagree.

Practice Book § 5-2, formerly § 285A, provides that "[a]ny party intending to raise any question of law which

---

[1] The parties executed the employment contract in 1988. Consequently, the statutes and regulations that were in effect at the time the contract was executed are controlling. See *Hatcho Corp.* v. *Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985); *Ciarleglio* v. *Benedict & Co.*, 127 Conn. 291, 293, 16 A.2d 593 (1940).

may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief under Section 5-1 or state the question distinctly to the judicial authority on the record before such party's closing argument and within sufficient time to give the opposing counsel an opportunity to discuss the question. If the party fails to do this, the judicial authority will be under no obligation to decide the question." See *Cottiero* v. *Ifkovic*, 35 Conn. App. 682, 688, 647 A.2d 9, cert. denied, 231 Conn. 938, 651 A.2d 262 (1994).

On October 2, 1996, the defendant raised this claim on the record before the trial court.[2] On October 2, 1996, the trial court authorized both parties to submit posttrial briefs. In its posttrial brief, dated October 21, 1996, the defendant claimed: "Because Rte. 156 Realty Company was not a named insured under the fire insurance policy of Hermitage Insurance Company's Policy #100131 at the time of the signing of the employment

---

[2] During the course of the defendant's cross-examination of Myer Biller, a witness for the plaintiff, defense counsel and the trial court engaged in the following colloquy:

"[Defense Counsel]: But under the statute your contract must be with an insured, must it not?

"The Court: Well . . . is it your position now that you did not have a contract with this man?

"[Defense Counsel]: Yes, Your Honor. It has been our position . . . ."

Later in the trial, defense counsel elaborated on the substance of this claim: "[Rte. 156 Realty] was not a named insured under the policy. One must go back to the enabling legislation and recognize that this is basically an insurance matter. That it is a licensed public adjuster under the aegis of the insurance department of the state of Connecticut and is controlled by the state statutes and the regulations promulgated thereunder. Recognizing that it is an insurance matter, it applies only to the insured. The threshold question is, and has to be, that the public adjuster performs a service for the insured. To do so, to ignore that limitation, both in the statute and the regulations, would be to do a great disservice to the reasoning that we are dealing with an insurance matter.

\* \* \*

"[Defense Counsel:] We never recovered anything as an insured [under the Hermitage insurance policy]. And the regulations require the contract to be with an insured. And that contract under the regulations is mandatory."

contract on August 22, 1988, and because Rte. 156 Realty Company failed, after exhausting every effort to reform said Policy #100131 to include it as a named insured, it could not be a party to an employment contract with a public adjuster as the same is defined in the State's statutes and regulations thereunder." Although this claim was perhaps less than clear when raised on the record, we conclude that the defendant satisfied Practice Book § 5-2 by distinctly raising this claim in its posttrial brief.[3] See *City Savings Bank of Bridgeport* v. *Dessoff*, 3 Conn. App. 644, 647, 491 A.2d 424, cert. denied, 196 Conn. 811, 495 A.2d 279 (1985).

Practice Book § 64-1 (a), formerly § 4059, provides in relevant part that the trial court's decision "shall encompass its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . ." In its memorandum of decision, the trial court did not address the defendant's claim because it improperly concluded that "[t]his claim appears to have been abandoned in the posttrial brief." In its motion for articulation, the defendant requested that "[t]he trial court specifically and directly address [its] consistent and persistent claim, as matter of law, that under § 38-69 of the Connecticut General Statutes . . . the threshold question that must be addressed is whether the defendant was a named insured under any policy of insurance covering the loss or damage by fire or other hazard policy, and failing to find that the defendant was so

---

[3] Additionally, in the defendant's motion to reargue, dated November 5, 1996, it again claimed: "In short, the parameters of the authority granted by the State legislature to a licensed public adjuster are clearly confined to the adjusting of loss or damage by fire or other hazard under any policies of insurance in behalf of the insured under said policies. The threshold question that must be answered in this case is whether or not there exists a contract, as required by statute, between a licensed public adjuster and an insured under a fire or other hazard insurance policy or policies. The absence of such a contract, as provided by statute, precludes recovery by the plaintiff."

insured, any contract by a public adjuster is outside the scope of authority granted under the General Statutes." In response, the trial court stated that "[t]he defendant has made this same argument before and the court has already addressed it in its memorandum of decision." On April 11, 1997, the defendant filed a motion for review of its motion for articulation. On May 14, 1997, we granted the defendant's motion, but denied the relief requested.

Our decision in this case, which reverses our ruling on the defendant's motion for review, would ordinarily mandate that we remand this case for the trial court to decide the defendant's claim. We decline to do so for two reasons. First, the defendant's claim presents a question of law. See *City Savings Bank of Bridgeport v. Dessoff*, supra, 3 Conn. App. 648. Second, " '[u]nder circumstances where the record presents the entire proceedings before the trial court, the question is essentially one of law, and we are in no different position than we would be in had the trial court answered it, we have considered, on its merits, the question thus left undecided.' " Id.

B

Having determined that this claim was properly raised by the defendant and is reviewable on appeal, we next reach the merits of the defendant's claim. We note that the defendant's claim presents an issue of first impression. Specifically, the defendant claims that, pursuant to General Statutes (Rev. to 1987) § 38-69 and regulations enacted by the insurance commissioner, the employment contract was unenforceable because, as a condition precedent to its enforceability, the defendant must be named as an insured party under the Hermitage insurance policy sought to be adjusted by the plaintiff.

We conclude that the scope of the plaintiff's employment as a licensed public adjuster was limited to "the

adjusting of loss or damage by fire or other hazard under any policies of insurance in behalf of the insured under such policies . . . ." General Statutes (Rev. to 1987) § 38-69. Our conclusion is based on the text of General Statutes (Rev. to 1987) § 38-69 and §§ 38-72 (h)-6 and 38-72 (h)-7, now §§ 38a-788-6 and 38a-788-7, of the Regulations of Connecticut State Agencies.

"The question of whether a particular statute or regulation applies to a given state of facts is a question of statutory interpretation . . . . Statutory interpretation presents a question of law for the court." (Citation omitted; internal quotation marks omitted.) *Rivera* v. *Fox*, 20 Conn. App. 619, 621, 569 A.2d 1137, cert. denied, 215 Conn. 808, 576 A.2d 538 (1990). Questions of law are subject to de novo review. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "In matters of statutory interpretation, we are guided by well established principles, paramount among which is the principle that [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 391, 709 A.2d 1116 (1998).

The plaintiff concedes that at all relevant times it was a licensed public adjuster. As such, the plaintiff was subject to those statutes and regulations that govern the conduct of licensed public adjusters. General Statutes (Rev. to 1987) § 38-69 provides in relevant part: " 'public adjuster' means any person, partnership, association or corporation who or which practices as a business the adjusting of loss or damage by fire or other hazard

*under any policies of insurance in behalf of the insured under such policies,* or who advertises or solicits business as such adjuster, or holds himself out to the public as engaging in such adjusting as a business. . . ." (Emphasis added.) Section 38-69 limits the scope of a licensed public adjuster's employment to "the adjusting of loss or damage by fire or other hazard under any policies of insurance in behalf of the insured under such policies . . . ."[4]

The limited scope of a licensed public adjuster's employment is further reinforced by several regulations enacted by the insurance commissioner. General Statutes (Rev. to 1987) § 38-72 (h), now § 38a-769 (e), provides: "The [insurance] commissioner may adopt such regulations . . . as he deems necessary, with respect to . . . the manner in which public adjusters shall conduct their business . . . and the form of the employment contract between a public adjuster and a client. The use of such contract shall be mandatory. . . ." "Although any regulation which exceeds the authority granted to the insurance commissioner is void . . . within their scope the regulations have the force of statutes." (Citations omitted.) *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 473, 370 A.2d 1011 (1976).

Pursuant to the authority conferred on him by General Statutes (Rev. to 1987) § 38-72 (h), the insurance commissioner adopted §§ 38-72 (h)-6 and 38-72 (h)-7 of the Regulations of Connecticut State Agencies. Section 38-72 (h)-6 of the regulations provides that "[n]o public adjuster shall enter into an employment contract except in conformity with this regulation. . . ." Section 38-72 (h)-6 outlines what information must be contained in

---

[4] Our examination of the legislative history of General Statutes (Rev. to 1987) § 38-69 did not disclose any useful information concerning the scope of a licensed public adjuster's employment. The definition of "public adjuster," which appears in § 38-69, was first adopted by the General Assembly in 1927. See Public Acts 1927, c. 270, § 1.

a licensed public adjuster's employment contract and provides a model contract. This model contract, which was followed by the plaintiff, mandates that "[t]his form must be signed by the licensed Public Adjuster and by *Insured*." (Emphasis added). Id. Moreover, the model contract further reinforces the limited scope of a licensed public adjuster's employment by providing signature spaces for only the insured, the public adjuster and the state licensee. Id. Furthermore, § 38-72 (h)-7 (b) of the regulations provides that "[a]ll employment contracts used by public adjusters to be valid shall be signed by an *insured* and property owner of the property involved, or their duly authorized agent or representative." (Emphasis added.)

On the basis of the foregoing statute and regulations, we conclude that the scope of the plaintiff's employment as a licensed public adjuster was limited to "the adjusting of loss or damage by fire or other hazard under any policies of insurance in behalf of the insured under such policies . . . ." General Statutes (Rev. to 1987) § 38-69. Accordingly, an employment contract involving a licensed public adjuster requires the participation of two parties: a public adjuster licensed by the state of Connecticut and an insured under a policy or policies insuring against loss or damage by fire or other hazard.[5]

---

[5] Although we recognize that precedent from other states and texts is of limited value in our interpretation of the aforementioned statute and insurance regulations, for comparative purposes only, we note that our interpretation of the scope of a licensed public adjuster's employment is consistent with that of other sources. See *Culbreth* v. *Lawrence J. Miller, Inc.*, 328 Pa. Super. 374, 382, 477 A.2d 491 (1984) ("business of a public adjuster is to sell to an insured the service of representing the insured in settling with the insured's carrier the insured's claim for loss"); 44 Am. Jur. 2d, Insurance § 1675, p. 666 ("public adjuster for the insured whose business has been recognized by a statute as a valid and legitimate occupation has the authority of representing an insured in the preparation and submission of a claim under his insurance contract, but is not authorized to prosecute or defend claims"); 46A Corpus Juris Secundum, Insurance § 1343, pp. 208–209.

Additionally, we conclude, on the basis of the regulations enacted by the insurance commissioner, that satisfaction of that requirement constitutes a condition precedent to the enforceability of a licensed public adjuster's employment contract. Section 38-72 (h)-6 of the regulations unequivocally states that "[n]o public adjuster *shall* enter into an employment contract *except in conformity with this regulation.* . . ." (Emphasis added.) In this context, the use of the word "shall" connotes that the performance of the requirement is mandatory rather than permissive because the regulation relates to a matter of substance, as opposed to a matter of convenience. See *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995); see also *Todd* v. *Glines*, 217 Conn. 1, 8, 583 A.2d 1287 (1991) ("use of the word 'shall' generally evidences an intent that the statute be interpreted as mandatory"). Section 38-72 (h)-7 (b) of the regulations provides that "[a]ll employment contracts used by public adjusters *to be valid* shall be *signed by an insured* and property owner of the property involved, or their duly authorized agent or representative." (Emphasis added.) Furthermore, we decline to enforce a licensed public adjuster's employment contract where, as here, enforcement would undermine a material requirement of the insurance regulations that govern such contracts.

On cross-examination, the plaintiff admitted that when both parties signed the employment contract, it was fully aware that the defendant was not named as an insured party under the Hermitage insurance policy.[6] In its memorandum of decision, the trial court found

---

[6] Myer Biller, a witness for the plaintiff, when asked whether, at the time both parties signed the employment contract, the plaintiff was aware that the defendant was not named as an insured party under the Hermitage insurance policy, testified: "That is correct, but the purpose of this contract was to try to reform that, create insurance for [Rte.] 156. And that is why I needed the retainer or otherwise I could not talk to the [Hermitage Insurance Company]."

that "[t]he defendant did not recover under the [Hermitage] fire insurance policy because attempts at reforming that policy to add it as an insured were not successful." Accordingly, the condition precedent to the enforceability of this employment contract never occurred because the defendant was unsuccessful in its efforts to reform the Hermitage insurance policy. As a result, the employment contract is unenforceable and the plaintiff is not entitled to recover pursuant to this contract.

C

Our analysis does not end here. The trial court, assuming arguendo that the plaintiff could not recover pursuant to the employment contract, concluded that it was entitled to recover in quantum meruit based on the value of the services it rendered on behalf of the defendant. We disagree.

"An implied contract can only exist where there is no express one. . . . [Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." (Citation omitted; internal quotation marks omitted.) *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 37, 632 A.2d 1134 (1993). "A determination of a quantum meruit claim requires a factual examination of the circumstances and of the conduct of the parties . . . that is not a task for an appellate court [but rather for the trier of fact]." (Internal quotation marks omitted.) Id., 40 "This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken." (Internal quotation marks omitted.) *Lupien* v. *Lupien*, 192 Conn. 443, 445, 472 A.2d 18 (1984); see *Web Press Services Corp.* v. *New London Motors, Inc.*, 205 Conn. 479, 483, 533 A.2d 1211 (1987). We conclude that, as a matter of

law, the plaintiff was not entitled to recover in quantum meruit under the present circumstances for two independent but equally compelling reasons.

## 1

First, we decline to allow recovery in quantum meruit because it would undermine an important statutory and regulatory requirement. In dealing with this issue, we look for guidance to precedent from our Supreme Court involving a claim for quasi-contractual recovery under a defective home improvement contract. In *Barrett Builders* v. *Miller*, 215 Conn. 316, 320–29, 576 A.2d 455 (1990), our Supreme Court declined to allow quasi-contractual recovery for work performed under a home improvement contract that did not comply with General Statutes § 20-429, and which the contractor admitted was unenforceable under the statute. The Supreme Court observed: "Connecticut law has long recognized that restitution is not available for performance rendered pursuant to a contract that is unenforceable on public policy grounds. . . . [A] person who does not comply with the statutory requirements will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy . . . *and that, [t]o permit a recovery on a quantum meruit would defeat and nullify the statute.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 323–25.[7]

---

[7] In *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 231, 720 A.2d 235 (1998), although our Supreme Court held that "letter-perfect compliance" with General Statutes § 20-429 is not a condition precedent to recovery under a home improvement contract, the court reaffirmed its decision in *Barrett Builders* v. *Miller*, supra, 215 Conn. 316. The Supreme Court determined that it properly denied quasi-contractual recovery in *Barrett Builders* because the contractor's violation of § 20-429 constituted a material noncompliance with the statute, and the contractor admitted that the contract was unenforceable under the statute. *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 229. The decision in *Wright Bros. Builders, Inc.*, does not affect the

In the present case, as we have already demonstrated, the employment contract did not comply with a material requirement of General Statutes (Rev. to 1987) § 38-69 and §§ 38-72 (h)-6 and 38-72 (h)-7 of the Regulations of Connecticut State Agencies, and, therefore, the contract was unenforceable. Although the statutes and regulations that govern licensed public adjusters do not explicitly bar recovery in quantum meruit, we decline to permit such recovery in the present case because it would defeat and nullify a material requirement of the foregoing statute and regulations, and is contrary to public policy. Accordingly, we conclude that, as a matter of law, the plaintiff was not entitled to recover in quantum meruit for the value of the services it performed on behalf of the defendant.

2

Second, we decline to authorize recovery in quantum meruit in this case because only an attorney admitted to the bar of this state can recover fees for services rendered in the settlement of the defendant's negligence action against Pequot. Additional facts are necessary for a discussion of this alternative basis for denying recovery in quantum meruit.

The defendant retained the law firm of Cooney, Scully and Dowling and filed a separate lawsuit against Pequot, Hermitage and Continental. Gaines also retained the same law firm and initiated a lawsuit against Pequot, Hermitage and Continental. The trial court consolidated these lawsuits and the parties eventually reached a settlement of $245,000. In its appellate brief, the plaintiff concedes that Hermitage contributed $5000 to this settlement and the carrier of Pequot's errors and omissions insurance policy contributed $240,000.

outcome in this case because, as we have already demonstrated, the plaintiff violated a material requirement of General Statutes (Rev. to 1987) § 38-69 and the regulations of the insurance commissioner.

In the present case, the trial court concluded that the "defendant did not recover under the [Hermitage] fire insurance policy because attempts at reforming that policy to add it as an insured were not successful." In its response to the defendant's motion for articulation, the trial court stated that the defendant's "recovery was not made from the fire loss carrier, [Hermitage]." If the defendant did not recover any funds from Hermitage, then the funds the defendant obtained from the settlement came from the carrier of Pequot's errors and omissions policy, the only other party that contributed to the settlement. In its lawsuit against Pequot, the defendant claimed that it was not named as an insured under the Hermitage insurance policy as a result of Pequot's negligence. It follows from those facts that the defendant recovered funds only from the carrier of Pequot's errors and omissions insurance policy, and that these funds were paid in settlement of the defendant's negligence action against Pequot.

We have already demonstrated that the legislature and the insurance commissioner have carefully limited the scope of a licensed public adjuster's employment, and they have not authorized licensed public adjusters to practice law on behalf of clients. See generally Regs., Conn. State Agencies § 38-72 (h)-6 (licensed public adjusters "are not allowed . . . to advise [clients] on any question of law"). "[General Statutes §] 51-88 prohibits the practice of law in or outside a Connecticut courtroom by a person not admitted as an attorney under the provisions of General Statutes § 51-80." *Perlah* v. *S.E.I. Corp.*, 29 Conn. App. 43, 46, 612 A.2d 806 (1992). "[N]o one is entitled to recover compensation for services as an attorney at law unless he has been duly admitted to practice before the court . . . . And the same rule applies to a claim based on quantum meruit." (Internal quotation marks omitted.) Id., 47.

Because only an attorney admitted to the bar of this state can prosecute, negotiate and settle a negligence action on behalf of another party, only an attorney can obtain payment for the performance of these services. As a matter of law, therefore, the plaintiff, a public adjusting firm, was not entitled to recover in quantum meruit a percentage of the defendant's settlement from a negligence action.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

The cross appeal is dismissed.

In this opinion the other judges concurred.