JONATHAN S. SCHREIBER *v.* CONNECTICUT
SURGICAL GROUP, P.C.
(AC 26677)

Flynn, C. J., and Bishop and Berdon, Js.

---

[5] Nevertheless, we can find nothing in the record to indicate that the taxation of costs was improper or unjust.

Argued February 9—officially released August 1, 2006

*Robert L. Hirtle,* for the appellant (plaintiff).

*Michael P. Shea,* for the appellee (defendant).

*Opinion*

BERDON, J. The plaintiff, Jonathan S. Schreiber, a plastic surgeon, appeals from the judgment of the trial court in favor of the defendant, Connecticut Surgical Group, P.C. The plaintiff claims that the court's finding and judgment on the quantum meruit claim in the second count of his complaint were contrary to the evi-

dence and the law. We do not agree and affirm the judgment of the trial court.

The plaintiff brought this action against the defendant, alleging breach of contract in the first count and quantum meruit in the second count. The court, after a trial to the court, rendered judgment in favor of the defendant on both counts of the complaint. The plaintiff then brought this appeal, challenging the court's finding and judgment on the quantum meruit claim. The plaintiff does not take issue with the court's ruling on the breach of contract claim.

The following facts and procedural history are relevant to our resolution of the claim on appeal. In July, 1995, the plaintiff was employed by the defendant, a professional corporation that comprises approximately seventy medical doctors who perform various types of surgery in the Hartford area. A contract signed by the parties, effective July 10, 1995, and terminating on June 30, 1999, set forth the terms of the plaintiff's employment agreement. Paragraph four of the contract provided the terms of the plaintiff's compensation, which included, in addition to a base salary of $130,000, adjusted yearly in accordance with the consumer price index, a bonus payable at least quarterly or more often. The bonus was to be determined by the defendant corporation on the basis of the plaintiff's share of collected professional receipts, or accounts receivables, in excess of the base salary and practice costs and expenses, and multiplied by a percentage to increase from 20 percent to 35 percent as long as the plaintiff's excess collected professional receipts did not exceed $350,000.[1] In the

---

[1] The relevant portion of paragraph four of the contract is written as follows:

"Compensation:

"(A) Your Base Salary during the term of this Agreement will be in the amount set forth in the following schedule paid monthly and subject to a required and elected deductions and withholding for taxes . . .

| July 10, 1995—June 30, 1996 | $130,000 |
| July 1, 1996—June 30, 1999 | $130,000, adjusted each July 1 according to CPI index of Fleet Bank |

event, however, that his excess collected professional receipts exceeded $350,000, the plaintiff's bonus would be based on a different, more lucrative formula.[2]

With regard to the ownership of assets, paragraph two of the contract provides: "All proceeds of your professional medical practice during this period [of employment] . . . will belong to the Corporation unless specifically provided to the contrary." Paragraph nine of the contract also specifies: "During your employment period . . . your work [will not] give you any financial ownership in the Corporation's accounts receivable . . . or other corporate assets other than the preceding bonus formula. You may be entitled to a bonus based upon your share of professional receipts received for which you have provided services . . . in accordance with the terms of Paragraph 4."

Throughout his employment, the plaintiff was paid a bonus on the basis of collected accounts receivables in addition to his base salary, according to the terms of the contract. Sometime in 1999, the defendant offered the plaintiff shareholder status in the defendant corporation. The plaintiff, however, declined the offer and

"(B) You shall also be entitled to a bonus which shall be payable at least quarterly or more often as determined by the Corporation based upon your share of collected professional receipts in excess of your Base Salary and your share of practice costs and expenses . . . times [a] percentage for the periods listed below:

| Period | Percentage |
| --- | --- |
| July 10, 1995—June 30, 1996 | 20% |
| July 1, 1996—June 30, 1997 | 25% |
| July 1, 1997—June 30, 1998 | 30% |
| July 1, 1998—June 30, 1999 | 35%" |

[2] Paragraph 4 (B) (g) of the contract provides: "[I]n the event that during this contract, the cumulative excess amount available, from your services, received by the Corporation exceeds $350,000 the following formula shall apply: 50% of the excess amount available greater than $425,000; 55% of the excess amount available greater than $425,000 until the excess received by the Corporation is greater than $500,000 and when and if the cumulative surplus exceeds $500,000 your compensation for the purpose of salary will be on the same basis as that in effect for shareholders at that time."

subsequently received a letter of termination from the defendant dated December 16, 1999, rescinding the offer in the event that it was not rejected and terminating the plaintiff's employment with the defendant. The letter also set forth that under the terms of the plaintiff's employment contract, he was entitled to ninety days notice of termination and during the termination period he would continue to receive his salary.[3] The court found that the defendant did not obligate itself to pay the plaintiff any bonus, as it had in the original contract. The court also found that the letter of termination was not an amendment to the original contract but a new, unilateral commitment by the defendant to the plaintiff.

The plaintiff continued to provide services pursuant to this letter until March 17, 2000, the expiration date of the ninety day period. Through December 31, 1999, the plaintiff was paid in accordance with the compensation plan under the original contract. In early 2000, the defendant also distributed to the plaintiff his share of the collected accounts receivable over the length of the original contract. For his work in 2000, after he received the termination letter, the plaintiff received his monthly compensation but was not paid for accounts receivable collected during this period, from January 1 to March 17, 2000. See footnote 4.

Subsequently, the plaintiff brought this action for breach of contract and quantum meruit to claim his share of the accounts receivables collected during the first quarter of 2000 or until his departure on March 17, 2000. As to the breach of contract claim, the court found that the plaintiff's last ninety days of employment were not governed by the original contract because it had

---

[3] The termination letter dated December 17, 1999, set forth in pertinent part: "Because, by the terms of your employment agreement with the Corporation, you are entitled to ninety (90) days prior notice of any termination, the Corporation will continue to pay to you your salary and benefits for a period of ninety (90) days from the date hereof."

expired on June 30, 1999. Although the defendant distributed to the plaintiff a bonus on the basis of his share of accounts receivables through the end of 1999, it was under no obligation to do so because the original contract had expired. The court concluded that the plaintiff had no entitlement to any bonus for accounts receivables collected in 2000.[4]

As to the quantum meruit claim, the court explained that for the plaintiff to recover on the basis of quantum meruit, the court must find that the language of the original contract and termination letter did not contain the complete terms of those agreements. The court then found that the terms of the original contract and the termination letter were unambiguous and had been performed by the plaintiff without objection. Concluding that it was thus confined to the terms of the agreements, the court also found in favor of the defendant under the quantum meruit claim.

The issue on appeal is whether the court improperly denied the plaintiff's quantum meruit claim because, as the plaintiff argues, contrary to the court's finding, the original contract and the letter of termination did not contain the entire terms of the agreement between the parties. The plaintiff appears to maintain, more specifically, that the provision in the contract that explains that his compensation "for the purpose of salary," should his gross receipts "cumulative surplus excee[d]

---

[4] The court also found that the plaintiff never was paid a bonus on the basis of uncollected accounts receivables, only on collected accounts receivables. The court's memorandum of decision stated in pertinent part: "Throughout the term of the contract and the extension of employment to which the plaintiff undoubtedly acquiesced (because he continued to work for the defendant) [the plaintiff] was never entitled to uncollected receivables *nor was he entitled to collected receivables until the end of the quarter in which they were collected.* In this case, the plaintiff left his employ before that quarter ended. Further, as stated [previously], the plaintiff had no entitlement whatsoever to such receivables because he was then not working pursuant to any agreement by the defendant to pay them." (Emphasis added.)

$500,000," "will be on the same basis as that in effect for shareholders at that time," was incomplete and unclear. Thus deficient, the plaintiff argues, it is necessary to look beyond the four corners of the contract and refer, in particular, to the past dealings of the parties in order to understand the agreement between them. The plaintiff further asserts that the defendant unjustly was enriched by the compensation that should have gone to the plaintiff and that, under the theory of quantum meruit, he is entitled to recover the reasonable value of services rendered.

We now set forth our standard of review. "[Q]uantum meruit [is a form] of the equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties. . . . A determination of a quantum meruit claim requires a factual examination of the circumstances and of the conduct of the parties . . . that is not a task for an appellate court [but rather for the trier of fact]. . . . This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken." (Citations omitted; internal quotation marks omitted.) *Biller Associates* v. *Route 156 Realty Co.*, 52 Conn. App. 18, 30, 725 A.2d 398 (1999), aff'd, 252 Conn. 400, 746 A.2d 785 (2000).

"Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. . . . The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." (Internal quotation marks omitted.) *Total Aircraft, LLC* v. *Nascimento*, 93 Conn. App. 576,

582 n.5, 889 A.2d 950, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006).

With those principles in mind, our examination begins with a determination of whether the court's finding that an express contract for employment existed between the parties is clearly erroneous.

"A contract is express if its terms are stated by the parties, either orally or in writing, and it is implied if its terms are not so stated. In other words, an implied contract is one in which some or all of the terms are inferred from the conduct of the parties and the circumstances of the case, though not expressed in words, while an express contract is one in which the parties arrive at their agreement and express it in words, either oral or written." 17A Am. Jur. 2d 48–49, Contracts § 12 (2004). "An express contract is a contract whose terms are stated by the parties; an implied contract is a contract whose terms are not so stated." 1 S. Williston, Contracts (4th Ed. Lord 1990) § 1:5, pp. 18–20.

In this case, we have an employment contract signed by the parties and a letter of termination, signed by the defendant, under which the plaintiff continued his employment.[5] It appears that the plaintiff argues that an implied contract existed between the parties on the basis of a portion of the contract regarding the bonus that states that "compensation for the purpose of salary will be on the same basis as that in effect for shareholders at that time." He states that "[i]n order to ascertain what the salary basis of shareholders was, it is necessary to go outside the four corners of said [c]ontract." We are not persuaded.

"Where the language of the contract is clear and unambiguous, the contract is to be given effect

---

[5] The court found that the letter of termination constituted a contract that the plaintiff agreed to by his performance, by continuing to provide services for the defendant.

according to its terms." (Internal quotation marks omitted.) *Morgenbesser* v. *Aquarion Water Co.*, 276 Conn. 825, 829, 888 A.2d 1078 (2006). "The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . [A] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." (Citations omitted; internal quotation marks omitted.) *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 537–38, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004).

From our review of the record, we conclude that both the original contract and the letter of termination were unambiguous and the terms clearly set forth. It is clear that an express contract existed between the parties. The original contract stated in great detail the compensation arrangement for the plaintiff. The contract under one section set forth the salary the plaintiff would receive during his employment and explained under a separate section his expected bonus structure. Thus, it should have been plain to the plaintiff what constituted his salary and what constituted his bonus and that these two were separate provisions. The termination letter clearly stated that he would continue to receive his salary and benefits until the end of the ninety day period. It did not state that he would be receiving a bonus for his work during the ninety day period. The omission of a reference to a bonus was conspicuous. Accordingly, we conclude that the court was not clearly erroneous in finding that the terms of both the original contract and the letter of termination were complete and unambiguous, and because of the clear terms of the both agreements, it could not find in favor of the plaintiff under the theory of quantum meruit. When

there is an express contract entered into by the parties, the plaintiff cannot recover under the theory of quantum meruit. *Total Aircraft, LLC* v. *Nascimento,* supra, 93 Conn. App. 582 n.5.

The plaintiff argues, in the alternative, that because the defendant was unjustly enriched by the compensation that should have gone to the plaintiff, he is entitled to recover the reasonable value of services rendered. Specifically, he claims that in addition to the salary he received,[6] he was due $142,962.14, his share of the accounts receivables attributable to fees from his patients. We do not agree.

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard." (Citations omitted; internal quotation marks omitted.) *Meaney* v. *Connecticut Hospital Assn., Inc.,* 250 Conn. 500, 511–12, 735 A.2d 813 (1999).

The letter of termination established that during the final ninety day period of employment, the plaintiff would receive a salary and benefits but no bonus. The amount of $142,962.14 claimed by the plaintiff, purportedly the plaintiff's share of the accounts receivables,

---

[6] For the services he provided in 2000, the plaintiff received $146,487.40.

was calculated according to the section of the contract providing for the plaintiff's bonus. If we are to follow the plaintiff's reasoning that a determination of the reasonable value of services should be based on the prior "course of dealing" between the parties, then we must consider the original contract. We note that paragraph nine of that contract established that the plaintiff's services would not give him any financial ownership in the accounts receivables of the defendant other than the bonus formula. The original contract further provides that "[the plaintiff] may be entitled to a bonus based upon [his] share of professional receipts received for which [he has] provided services . . . ." The letter of termination that governed the plaintiff's final ninety day period of employment did not provide for a bonus, to wit, no interest in the accounts receivable attributable to the professional receipts received for the services provided by the plaintiff. The plaintiff has not shown that, in addition to the $146,487.40 salary he received for his services from January 1 to March 17, 2000, he is entitled to an additional $142,962.14 for the reasonable value of his services. Accordingly, we cannot conclude that the plaintiff is entitled to further compensation under the theory of unjust enrichment.

The judgment is affirmed.

In this opinion the other judges concurred.