DAVID M. SOMERS AND ASSOCIATES, P.C.
*v.* LORI C. BUSCH
(SC 17839)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued April 16—officially released August 7, 2007

*Gary J. Greene*, for the appellant (plaintiff).

*Paul A. Keily*, for the appellee (defendant).

*Opinion*

NORCOTT, J. This appeal requires us to consider the extent to which a client is obligated to compensate her former attorney for professional services rendered, when that attorney was disbarred prior to the completion of the representation. The plaintiff, David M. Somers and Associates, P.C.,[1] a law firm, appeals[2] from the trial court's judgment in favor of the defendant, Lori C. Busch, a former client of the plaintiff. The plaintiff claims that the trial court improperly: (1) found that he was not entitled to recover damages for breach of contract; and (2) applied the theory of unjust enrichment, in its determination of whether the plaintiff could recover for legal work performed on the defendant's behalf. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In the fall of 1998, the defendant met with the plaintiff, then a licensed Connecticut attorney, during her search for legal representation in proceedings to obtain a dissolution of marriage from her husband, Karl Busch. During their meeting, the defendant told the plaintiff that she and her husband already had

---

[1] Although this action was brought by David M. Somers and Associates, P.C., David M. Somers was formerly the president and sole attorney employed by the plaintiff law firm, and was individually responsible for the representation of the defendant. For purposes of clarity, all references to the plaintiff in this opinion are to David M. Somers individually.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

agreed on custody and visitation arrangements with respect to their three children, and that they had planned to divide their marital assets equally. The defendant also informed the plaintiff that the only unresolved issues concerned the amounts that her husband would pay for alimony and child support, and she expressed her desire for a swift and amicable divorce. At the conclusion of the meeting, the defendant signed a pre-printed retainer agreement (agreement) that the plaintiff had drafted.[3]

---

[3] The agreement provided in relevant part: "1. Employment: I hereby employ David M. Somers & Associates, P.C. to act as my attorney in processing my dissolution of marriage proceedings.

"2. Legal Fees Retainer: I understand and hereby agree to pay David M. Somers & Associates, P.C. the initial sum of Two Thousand [five hundred] Dollars ($2,500) as a legal fees retainer. I understand and agree to pay an hourly attorney's fee of $240 that will be charged against this and any subsequent retainers. In addition, I agree that any outstanding invoices will be immediately paid in full from the proceeds of any lump sum payment of alimony arrearage, settlement or other award in the dissolution matter. In addition, I understand and agree to pay for Legal Assistant's work that is billed at $90.00 per hour, whereas clerical time that is billed at $30.00 per hour for work on any special project legal matters. I further understand that legal work may include, in part, meetings, review of documents, research, letter and document drafting, telephone calls, depositions, attendance at creditors meetings, court appearances, travel time and any and all other work related to my legal matters. This legal work is not in contemplation of or in connection with any bankruptcy proceedings. I have not been promised any particular results by the firm of David M. Somers & Associates, P.C. . . .

"4. Invoices, Additional Retainers: I also authorize David M. Somers & Associates, P.C. to issue invoices to me for charges incurred or any court costs or other expenses advanced in my behalf. However, it is clearly understood, as stated above, that during the pendency of my legal matters, that David M. Somers & Associates, P.C. has the right to request payment of sums owing in excess of the initial retainers or additional retainer amounts by a date certain, and that such requests shall be honored promptly within seven (7) days of request. It is expressly understood and agreed that failure of such payment by the deadline imposed shall entitle the attorney, at his option, to refuse to proceed with the representation in the case and exercise his right to a retaining lien on case(s) files, or to seek to withdraw from representation in the case(s) with Court approval.

"5. Invoices: I understand that I will be invoiced each month, and that said invoice is immediately due in full, and payable upon receipt. . . .

Following the initial consultation, the plaintiff assisted the defendant in commencing her dissolution of marriage action. The plaintiff continued to represent the defendant in that action for approximately one year, until he was disbarred on September 15, 1999.[4] Although the plaintiff had been presented for possible disbarment less than four months after the agreement was signed, he did not inform the defendant of either the pending disbarment proceedings or his subsequent disbarment. The defendant instead learned of the plaintiff's disbarment through a friend of hers, and attempted to contact the plaintiff via telephone to determine his status. The plaintiff later returned the defendant's call, confirmed that he had been disbarred, and informed the defendant that she remained responsible for all fees she had incurred while the plaintiff had handled her case.

Thereafter, the plaintiff brought this action for breach of contract to recover $13,124.62 for services rendered to the defendant from September 10, 1998 through July 2, 1999. The defendant also sought to recover 12 percent per annum interest on the claimed unpaid balance, as well as costs and attorney's fees. In her answer, the defendant denied that she owed the amount claimed by the plaintiff, and also claimed that the plaintiff had "billed excessive hours, filed frivolous motions, expended unnecessary time in court . . . and made

"6. Interest; Collection Costs: I also understand that a one percent (1%) interest charge per month (twelve percent [12%] simple interest per annum) will be added to all outstanding amounts due from me to David M. Somers & Associates, P.C. commencing thirty (30) days after the date of an invoice absent payment. . . ."

[4] The plaintiff had been presented on charges that he had " 'testified falsely, counseled witnesses to testify falsely, engaged in several conflicts of interest, and brought meritless civil claims before the Superior Court in violation of Rules 1.2, 1.7, 1.8, 3.1, 3.4, and 8.4 of the Rules of Professional Conduct.' " *Statewide Grievance Committee* v. *Somers*, Superior Court, judicial district of Hartford, Docket No. CV-98-0585853-S (September 8, 1999).

unreasonable demands in order to maximize his billing . . . ."[5]

After a three day court trial, the trial court issued a supplemental briefing order asking the parties to address, inter alia, whether the plaintiff was entitled to restitutionary relief in the form of quantum meruit or unjust enrichment.[6] The trial court ultimately concluded that the plaintiff could not recover contract damages because he had failed to perform the "single, indivisible task" that he had agreed to perform under the agreement, namely, the representation of the defendant, absent excusable withdrawal, until she obtained a final dissolution of her marriage. The trial court also concluded that the plaintiff could recover only under the doctrine of unjust enrichment, because the work for which the plaintiff sought recovery had been performed pursuant to a valid express contract that he had breached due to his disbarment.[7] The trial court determined that the plaintiff was entitled to compensation in an amount equal to the value of the benefit that the defendant had derived from actions taken by the plaintiff in furtherance of the agreement's objective, namely, the dissolution of the defendant's marriage. The trial court found, however, that the amount of money that the defendant previously had tendered to

---

[5] The defendant also brought a counterclaim against the plaintiff, alleging that he had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendant claimed that the plaintiff's failure to inform her of his disbarment proceedings was a material misrepresentation, that the plaintiff sought to maximize his billing without regard to the defendant's interests, and that the plaintiff's omissions and actions were unfair and deceptive in violation of CUTPA. The trial court found the defendant's counterclaim to lack merit, and rendered judgment for the plaintiff on the counterclaim. The defendant has not cross appealed from the judgment.

[6] In his supplemental brief dated November 28, 2005, the plaintiff requested that the trial court allow an alternative claim for restitutionary relief.

[7] The parties do not dispute that the agreement constituted a valid express contract.

the plaintiff exceeded the value of any benefit she had derived from the plaintiff, so that the plaintiff was not entitled to any further recovery for past services rendered. Accordingly, the trial court rendered judgment for the defendant. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly: (1) concluded that the plaintiff was not entitled to recover damages for breach of contract; (2) applied the doctrine of unjust enrichment in determining whether to allow recovery for legal services rendered to the defendant; and (3) concluded that the measure of recovery should be determined by the benefit derived by the defendant, from the legal services performed by the plaintiff, rather than the reasonable value of those services.[8]

I

The plaintiff first claims that the trial court improperly concluded that he had breached the agreement and was, therefore, barred from recovering contract damages. He argues that the "clear and unequivocal" language of the agreement rendered it a "separable, divisible arrangement," so that his inability to represent the defendant until she obtained a final judgment dissolving her marriage did not constitute a breach that would preclude recovery under the agreement. We disagree.

We begin by setting forth the appropriate standard of review. When a party asserts a claim that challenges the trial court's construction of a contract, " 'we must first ascertain whether the relevant language in the

---

[8] The plaintiff also claims separately that the trial court made "erroneous factual findings contrary to the record and use[d] those findings in determining whether to award damages to the plaintiff . . . ." Although the plaintiff failed to brief this issue, an analysis of the trial court's factual findings is nevertheless necessary for our review of the other three issues briefed by the plaintiff.

agreement is ambiguous.' " *Montoya* v. *Montoya,* 280 Conn. 605, 612, 909 A.2d 947 (2006). A " 'contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself.' " *Kline* v. *Kline,* 101 Conn. App. 402, 408, 922 A.2d 261 (2007). Accordingly, " 'any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.' " *Montoya* v. *Montoya,* supra, 612. When the language of a contract is ambiguous, "the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC,* 273 Conn. 724, 738, 873 A.2d 898 (2005).

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Lawrence,* 282 Conn. 141, 154–55, 920 A.2d 236 (2007).

The contractual scope of representation is set forth in paragraph one of the agreement, which provides: "I [the defendant] hereby employ David M. Somers & Associates, P.C. to act as my attorney in processing my dissolution of marriage proceedings." We conclude that the phrase "in processing my dissolution of marriage proceedings" is indeterminate with regard to the dura-

tion of the representation, and that the language is, therefore, facially ambiguous. Accordingly, we examine the trial court's findings to determine if they are clearly erroneous.

It its memorandum of decision, the trial court concluded that the language in paragraph one of the agreement "implied a mutual intention to obtain a final dissolution of her marriage in a court of law." The trial court primarily relied on five different factual findings in support of its conclusion. First, the trial court found the defendant to have understood and believed that the plaintiff would "represent her throughout her dissolution action, from start to finish." Second, the trial court examined paragraph two of the agreement, which provided that the defendant was required to pay "any outstanding invoices . . . from the proceeds of any lump sum payment of alimony arrearage, settlement or other award in the dissolution matter," the payment of which the trial court found would not "logically be made until a final judgment of the dissolution . . . ." Third, paragraph four of the agreement provided that the plaintiff had the right to "refuse to proceed with representation" if (1) the plaintiff requested payment of sums owed by the defendant, and (2) the defendant failed to render payment within seven days of request. The trial court found that the plaintiff had not, in fact, ever made such a request to the defendant, and that the plaintiff was, therefore, not contractually entitled to withdraw from representation of the defendant.[9] Fourth, the agreement did not specify, nor did the plaintiff and defendant ever discuss, the approximate number of attorney hours needed to obtain a dissolution of the marriage, or

[9] The trial court found that absent demand for payment under paragraph four of the agreement, delays in the payment of amounts owed to the plaintiff would simply subject the balance owed to the interest provision contained in paragraph six of the agreement. For the specific language provided in the agreement, see footnote 3 of this opinion.

whether any additional retainer agreements would be necessary to effectuate a final dissolution of the marriage. Finally, the trial court found that the plaintiff had discontinued his representation of the defendant because he had been disbarred, not because he had rendered full performance under the terms of the agreement or because the defendant had failed to pay past due bills. We uphold the findings of the trial court, which find ample support in the record and are not, therefore, clearly erroneous, and we conclude that the plaintiff contracted to represent the defendant, absent excusable withdrawal, through the final dissolution of her marriage.[10]

---

[10] Our conclusion is further supported by the doctrine of contra proferentem, whereby ambiguities in a contract are construed against the party who had drafted the contract. See, e.g., *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 784–89, 900 A.2d 18 (2006). "The premise behind the rule is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . . A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." (Internal quotation marks omitted.) Id., 789 n.7. Although the contra proferentem rule traditionally has been applied in the context of insurance contracts, we see no reason to distinguish between insurance companies and other drafters with superior knowledge, particularly in the fiduciary context of the attorney-client relationship, as an attorney has a duty to act in the best interests of his or her client. See, e.g., *Updike, Kelly & Spellacy* v. *Beckett*, 269 Conn. 613, 648 n.28, 850 A.2d 145 (2004) ("an attorney-client relationship imposes a fiduciary duty on the attorney . . . characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other" [internal quotation marks omitted]); *Matza* v. *Matza*, 226 Conn. 166, 184, 627 A.2d 414 (1993) ("[t]he relationship between an attorney and his client is highly fiduciary in its nature and of a very delicate, exacting, and confidential character, requiring a high degree of fidelity and good faith" [internal quotation marks omitted]). As the language in the agreement regarding scope of representation was ambiguous, the rule of contra proferentem provides yet another basis for concluding that the plaintiff contracted to represent the defendant until she obtained a final dissolution of her marriage in a court of law.

The trial court then correctly determined that the plaintiff could not recover contract damages under the agreement "unless he has fully performed his own obligation under it, has tendered performance, or has some legal excuse for not performing." *DiBella* v. *Widlitz*, 207 Conn. 194, 199, 541 A.2d 91 (1988); see *Ravitch* v. *Stollman Poultry Farms, Inc.*, 165 Conn. 135, 149, 328 A.2d 711 (1973). The trial court found that the plaintiff was in fact precluded, as a result of his disbarment, from rendering any further performance under the agreement. The trial court also concluded that disbarment did not constitute a valid legal excuse for the plaintiff's inability to perform further, because the disbarment was the result of his own actions. When a contractual party creates a condition that renders further performance under that contract impossible, subsequent nonperformance by the party who created the condition is not legally excusable. *Straus* v. *Kazemekas*, 100 Conn. 581, 592–95, 124 A. 234 (1924). The trial court, therefore, properly concluded that the plaintiff could not recover contract damages under the agreement, because he was unable to perform fully, did not tender performance, and did not have a valid legal excuse for nonperformance.

## II

The plaintiff next claims that the trial court improperly applied the doctrine of unjust enrichment, rather than the doctrine of quantum meruit, and that the court wrongfully denied him recovery of the reasonable value of legal services that he had rendered to the defendant.[11] The trial court concluded that relief under quantum meruit was not available to the plaintiff because the services that he had rendered had been performed

---

[11] Although the plaintiff briefed this claim as two separate issues, the applicable doctrine of equitable relief directly determines the available measure of recovery. Accordingly, the issues are combined for purposes of our review.

under a valid express contract. The trial court also determined that, although the doctrine of unjust enrichment was applicable, the defendant already had compensated the plaintiff in an amount greater than the value of benefit she derived from the plaintiff's services. Accordingly, the trial court concluded that the defendant had not been unjustly enriched and that the plaintiff could not, therefore, recover restitution damages. We agree with the trial court.

We begin by setting forth the standard of review. Determining whether the equitable doctrines of quantum meruit and unjust enrichment are applicable in any case requires a factual examination of the particular circumstances and conduct of the parties. See *Vertex* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006) (describing standard for unjust enrichment); *Schreiber* v. *Connecticut Surgical Group, P.C.*, 96 Conn. App. 731, 737, 901 A.2d 1277 (2006) (describing standard for quantum meruit). The amount of damages available under either doctrine, if any, is a question for the trier of fact. See, e.g., *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994) ("the determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal"). The factual findings of a trial court "must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion." Id. When a trial court's legal conclusions are challenged, however, "our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

A

We begin with the plaintiff's claim that the trial court improperly declined to apply the doctrine of quantum meruit, and, therefore, barred the plaintiff from recovering the reasonable value of professional services he had rendered to the defendant. As it is a question of law when a trial court determines whether an equitable doctrine of recovery is applicable in any particular case, we utilize a plenary standard of review. See, e.g., id.

A party may not recover the reasonable value of services rendered, pursuant to the doctrine of quantum meruit, when the actions for which it seeks relief were governed by an express contract. See *Cole* v. *Myers*, 128 Conn. 223, 228, 21 A.2d 396 (1941); see also *Shapero* v. *Mercede*, 262 Conn. 1, 7, 808 A.2d 666 (2002) ("[t]he measure of damages in quantum meruit is the value of the services rendered"); *McCullough* v. *Waterside Associates*, 102 Conn. App. 23, 30, 925 A.2d 352 (2007) (attorney barred from recovering under doctrine of quantum meruit when "he had a contractual means of recovery"); *Schreiber* v. *Connecticut Surgical Group, P.C.*, supra, 96 Conn. App. 739–40 ("[w]here there is an express contract entered into by the parties, the plaintiff cannot recover under the theory of quantum meruit"). As discussed previously, we have concluded that the services for which the plaintiff seeks recovery were rendered pursuant to a valid express contract. Accordingly, the trial court properly determined that the plaintiff was barred from recovering the reasonable value of services rendered under the doctrine of quantum meruit.

B

Although it rejected the plaintiff's claim for recovery under the doctrine of quantum meruit, the trial court determined that it would be inequitable for the defendant to retain any benefit derived from the plaintiff

without paying for that benefit. We agree with the trial court's analysis of this issue.

When a contracting party has unjustifiably breached a contract, the breaching party cannot recover restitution damages unless the nonbreaching party has accepted partial performance, because such acceptance "raise[s] an implied promise on his part to pay for it." *Kelley* v. *Hance*, 108 Conn. 186, 190, 142 A. 683 (1928); see *Morello* v. *J.H. Hogan, Inc.*, 1 Conn. App. 150, 152, 468 A.2d 1248 (1984). "Such recovery is allowed, not upon the original contract, for that has been breached, but in quasi-contract upon the theory that if such recovery were not allowed the other party would be unjustly enriched at the expense" of the party who had partially performed prior to breaching the contract. *Kelley* v. *Hance*, supra, 188. The proper measure of damages to apply when a party breaches a contract, and later seeks restitution for partial performance prior to the breach, is the value of the benefit resulting from the partial performance. See *Automotive Ins. Co.* v. *Model Family Laundries, Inc.*, 133 Conn. 433, 440, 52 A.2d 137 (1947) (breaching party can recover for partial performance under contract in amount of "the benefit derived from the performance in advancing the object of the contract" [internal quotation marks omitted]). As stated previously, the trial court's determination of whether unjust enrichment is available as a means of recovery requires a factual examination, and the trial court's determination of the exact amount of recovery under the doctrine, namely, the value of benefit derived from the plaintiff's actions, is a question of fact. See *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 283.

In the present case, the trial court concluded that "[i]f . . . a Connecticut lawyer fails to fully perform services for a client, as agreed to, under a contract he has terminated because of his own disbarment, the

measure of his recovery, if any, from his client for the partial performance of those services should be the benefit derived by the client from that partial [performance] in advancing the objects of the contract, not the reasonable value of such services in the relevant legal services market." Applying this rule, the trial court determined that many of the services for which the plaintiff sought compensation did not benefit the defendant, as they did nothing to advance the purpose of the agreement, and that the plaintiff was, therefore, not entitled to any restitution for those services.[12] The trial court also determined, however, that the plaintiff was entitled to compensation for benefits conferred on the defendant that were in furtherance of the agreement's objective,[13] and the trial court found that the value of

---

[12] As stated previously, when the defendant hired the plaintiff to represent her in the dissolution of her marriage, the only issues that needed to be resolved between the parties were the amount of money her husband would pay for alimony and child support. The trial court found that several of the plaintiff's actions did nothing to further the defendant's goals and the objective of the agreement. Such actions taken by the plaintiff included, but were not limited, to: (1) contesting the suitability of her husband's home for joint custody, which the plaintiff pursued without the defendant's approval; (2) demanding and working toward a split of the marital assets of 60 percent to 40 percent in favor of the defendant, even though the defendant explicitly informed the plaintiff that she had previously agreed with her husband to split the marital assets equally; and (3) the plaintiff's continued refusal to have a four-way conference with the defendant, her husband and his attorney, falsely claiming that it was the defendant who refused to take part in the meeting.

[13] The trial court found that the following actions undertaken by the plaintiff were of benefit to the defendant: "(1) preparation, service upon the defendant's husband and filing . . . the defendant's original writ, summons, and complaint in the dissolution action, affidavits of custody concerning the defendant's three minor children, and notice of lis pendens on the marital home . . .

"(2) preparation and filing . . . of the defendant's answer to her husband's cross complaint in the dissolution action . . .

"(3) drafting and service upon the defendant's husband . . . of nonstandard interrogatories to be answered by the husband concerning the current state of his income and assets . . .

"(4) preparation and filing . . . of the defendant's financial affidavits in connection with her husband's motion for determination of alimony and support . . .

the benefits derived by the defendant amounted to, at most, $3625. As the defendant had already paid the plaintiff approximately $4730, the trial court determined that the plaintiff's compensation exceeded the value of benefits conferred upon the defendant. Accordingly, the trial court concluded that the defendant had not been unjustly enriched through the plaintiff's partial performance, and rendered judgment for the defendant.

Although the unjust enrichment rule of recovery for partial performance prior to breach of a contract has not yet been applied in the factual situation—namely, an attorney disbarred prior to the conclusion of representation—we see no reason that it should not be, because there is no rational justification for applying a different rule to attorneys as a group of professionals. Accordingly, we conclude that if an attorney fails to perform fully under a contract that has been terminated because of his or her own disbarment, the disbarred attorney may recover, under the doctrine of unjust enrichment, for partial performance of services rendered in furtherance of the contract's objective, the measure of which is the benefit derived by the client.[14] As the trial court properly found that the amount of benefit afforded to the defendant, as a result of plaintiff's services, was less than the amount the defendant already had paid to the plaintiff, we conclude that the plaintiff may not recover restitutionary relief for legal services rendered to the defendant.

The judgment is affirmed.

In this opinion the other justices concurred.

---

"(5) preparation for and attendance at a hearing . . . on the defendant's husband's motion for determination of alimony and support . . .

"(6) preparation and faxing to court and opposing counsel of case management agreement . . .

"(7) preparation and service . . . of [the] defendant's discovery response . . . ."

[11] Actions taken by an attorney should be considered "beneficial" to a client if they are reasonably undertaken in furtherance of the client's goals

and the objectives provided in the retainer agreement. Whether a client has
derived benefit in any particular case is a determination for the trier of fact.