ED LALLY AND ASSOCIATES, INC.
*v.* DSBNC, LLC, ET AL.
(AC 34497)

Robinson, Alvord and Keller, Js.

Argued April 11—officially released September 17, 2013

*John H. Parks*, with whom was *George C. Schober*, for the appellants (named defendant et al.).

*Patrick W. Boatman*, with whom were *Benjamin R. Plourd* and, on the brief, *Jenna N. Sternberg*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendants DSBNC, LLC, D.H. Williams, Inc., Moosehorn Road, LLC (Moosehorn, LLC), and John H. Parks[1] appeal from the judgment of the trial court rendered in favor of the plaintiff, Ed Lally & Associates, Inc., following a court trial, for the foreclosure of two mechanic's liens, breach of contract and quantum meruit. On appeal, the defendants claim that the trial court (1) did not have subject matter jurisdiction to find in favor of the plaintiff on the foreclosure of its mechanic's liens because the mechanic's liens were invalid, (2) improperly found that the plaintiff had proven damages on the breach of contract count, (3)

---

[1] O'Grady & Parks, LLC, and Lienfactors, LLC, were also defendants that filed appearances in the case. The appeal form asserts that all of the defendants are appealing from the judgment of the trial court; however, with the exception of their appearances, neither O'Grady & Parks, LLC, nor Lienfactors, LLC, filed responsive pleadings in the action in the trial court. Moreover, Lienfactors, LLC, is represented by a different law firm than the rest of the defendants, who are represented by Parks. In his brief to this court, the defendants' counsel signed the brief as "Defendant-Appellant," but in the statement of facts and nature of proceedings, names DSBNC, LLC, D.H. Williams, Inc., Moosehorn, LLC, and Parks as the defendants against whom the plaintiff filed suit. Thus, for the purposes of this appeal, we refer to DSBNC, LLC, D.H. Williams, Inc., Moosehorn, LLC, and Parks as the defendants.

improperly found in favor of the plaintiff on the quantum meruit count because the court previously had found in favor of the plaintiff on the breach of contract count, (4) erred in its rulings on the defendants' amendments to their answer, special defenses and counterclaim, and (5) improperly ruled that evidence of the plaintiff's ethical violations was not relevant. We affirm the judgment of the trial court.

The following facts, either undisputed or found by the trial court, and procedural history are necessary for our resolution of this appeal. In 2003, D.H. Williams, Inc., a corporation in which Douglas Williams was an officer, owned property in Granby located at 30 Moosehorn Road and 33 Moosehorn Road.[2] Williams approached Edward Lally, the sole proprietor of the plaintiff, to provide engineering and surveying services on the property. After reviewing the existing maps, soil reports and data that had been generated by a previous engineering firm and speaking to the town planner of Granby, Lally agreed to accept the project, but indicated that Williams could not be in town during the design or approval process and that Williams' name could not be associated with the project because the town of Granby Inland Wetlands and Watercourses Commission was unhappy with Williams.

After this initial meeting, Williams brought Victor Shibley, a developer from Massachusetts, to a second meeting with Lally where they discussed the project. At the request of Williams, Lally drafted a proposal dated August 5, 2003, addressed to Victor Shibley Homes for a subdivision of approximately six lots on the property. The proposal listed seventeen tasks grouped into four phases that the plaintiff would need to complete as well as the cost of each task. Most of the tasks were billed

---

[2] Hereinafter, we refer to 30 Moosehorn Road and 33 Moosehorn Road as the property, collectively, and individually by name where appropriate.

under a flat fee; two items—informal review and meetings—were designated as hourly billing. The proposal also included a section for "other services," which included additional work, reproductions, and postage, delivery and FedEx charges. The additional work section noted that "[c]hanges to the plans or additional work requested by the Client or required by the Town, State, Utility Companies, or others shall be billed hourly to the Client." Under the section entitled, "Terms of Agreement," the proposal noted that "[a]ll fees are estimated based on normal anticipated Surveying services expected for a project of this type. If extraordinary services are required due to site conditions, Client changes or governmental agencies, [the plaintiff] reserves the right to bill for such services on an hourly basis at their standard rate."

Shibley signed the proposal, but title to the property remained in the name of D.H. Williams, Inc. Lally's primary contact for the property continued to be Williams. In April, 2004, Williams formed A&J Development, LLC, and thereafter instructed Lally to bill A&J Development, LLC, for work on the project. No one other than Williams was authorized to act on behalf of D.H. Williams, Inc., during that time.

In 2005, Williams requested an update on the status of the project. By letter dated March 28, 2005, and addressed to A&J Development, LLC, Lally sent Williams a project update (2005 update). The letter, the basis of which was the proposal that had been accepted by Shibley, denoted which tasks had been completed and provided for an increased price for tasks that had not yet been completed. Attached to a fax transmittal sheet dated May 31, 2005, Lally received a revised copy of the 2005 update from Parks. A&J Development, LLC, had been crossed out as the addressee and replaced with the following: "John H. Parks, Moosehorn Road LLC, 352A Billings Road, Somers, CT 06071." Also, on

the last page of the 2005 update, was the handwritten notation "Accepted" and the signatures for Parks and for Moosehorn Road, LLC, by Parks as managing member. The fax transmittal sheet also included a message that stated: "I have prepared and signed the organizational papers for a new LLC known as Moosehorn Road LLC. These papers are being sent to the Secretary of State's office. Once they have been accepted, D.H. Williams, Inc. is signing a deed to Moosehorn Road LLC. I am the managing member of Moosehorn Road LLC. I and Moosehorn Road LLC would like to accept the proposal you sent to Douglas Williams and D.H. Williams, Inc. on 3/28/05. Enclosed is a signed copy of your proposal. I am mailing you a check for $2,500.00. I would like you to begin your work. If you need more money let me know." Subsequently, by a deed dated July 5, 2005, and recorded on July 18, 2005, D.H. Williams, Inc., transferred title of 33 Moosehorn Road to Moosehorn, LLC.

Approximately one month after Lally received the signed 2005 update from Parks, Lally, Williams and Parks met to discuss the project. Lally informed Parks and Williams of the difficulties with the project, including the need for an agreement with two abutting property owners, the Champagnes and the Chamberlains, as well as the lack of adequate frontage. Lally also discussed whether the property would support ten lots rather than the six lots originally proposed. After the meeting, Lally believed that Williams continued to direct the work of the project and would act as the representative for Parks.

Lally evaluated the feasibility of a ten lot subdivision and determined that the subdivision could only support eight lots if waivers were obtained. He communicated that information to Williams and delivered progress plans at least eight times to Williams' office. Progress plans dated March 7, 2006, were given to Williams. The

progress plans showed that the proposed private road providing access to the subdivision would cross over parts of property known as lot 11 or 25 Moosehorn Road. After March, 2006, work on the project ceased for nearly one and one-half years because the issues of getting a road right-of-way, grading rights and the relocation of the drive on lot 11 had not been resolved.

In March, 2006, Parks filed the articles of organization for DSBNC. He dissolved Moosehorn, LLC, in April, 2007, but did not transfer title to 33 Moosehorn Road from Moosehorn, LLC, to DSBNC, LLC, until August, 2009. Meanwhile, in December, 2008, D.H. Williams, Inc., conveyed 30 Moosehorn Road to DSBNC, LLC.

In August, 2007, Lally met with Williams and Parks regarding the problems with the project. They discussed the fact that the property needed zoning waivers because they were asking for more lots than were normally granted and the fact that the relationship with the Champagnes was not very good. At that meeting, Lally was asked to communicate with Roy Champagne to come to a resolution so that he would not object to the waivers. Lally contacted Roy Champagne on two separate occasions, but no resolution was ever reached.

At some point, the parties decided to pursue approval by the Department of Energy and Environmental Protection (department) before seeking approval from the town because they could get approval for the major design components before resolving the subdivision problems.[3] In December, 2008, Lally met with Parks to discuss the progress with the project and the progress with the submission to the department. Parks e-mailed

---

[3] The project required approval from the department prior to construction due to a consent decree that had been rendered against Williams when he first acquired the property. See *Rocque* v. *D.H. Williams, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-01-0807744 (February 11, 2003) (*Hon. Thomas H. Corrigan*, judge trial referee).

Lally to confirm that the meeting had taken place and that the date of submission of the application to the department was to be January 31, 2009.[4] The submission, which included eleven maps and a storm water system analysis report dated April 14, 2009, was to be submitted along with an application form that is found on the department's website. The last date that work was performed on the project was on April 22, 2009, when one of the plaintiff's employees, Thomas J. Barresi, spent two hours completing the department's application form.

The plaintiff subsequently submitted to Parks an invoice dated March 31, 2009, for work that had been performed since the December, 2008 meeting between Lally and Parks regarding the submission to the department. The amount sought for the work was $47,538. Parks responded by letter disputing the bill. After receiving Parks' letter, Lally reviewed the time slips that had been submitted and performed a final reconciliation of the account. The final calculation of the amount due to the plaintiff was $44,570.50.

On July 14, 2009, the plaintiff filed a mechanic's lien in the amount of $44,570.50 on 30 Moosehorn Road for labor and services rendered that commenced on October 5, 2003, and ended on April 22, 2009. The plaintiff asserted that it had entered into an agreement with D.H. Williams, Inc., to perform services on 30 Moosehorn Road and that the agreement subsequently was amended such that the plaintiff performed services for Shibley Construction, Ltd., A & J Development, LLC, Moosehorn, LLC, and Parks. The lien stated that 30 Moosehorn Road was transferred to DSBNC, LLC. The same day, the plaintiff also filed a mechanic's lien in the amount of $44,570.50 on 33 Moosehorn Road for

[4] The e-mail noted the date as January 31, 2008, but the court pointed out and the plaintiff's counsel confirmed that the year should have read 2009.

labor and services rendered that commenced on September 12, 2005, and ended on April 22, 2009. The plaintiff asserted that it had entered into an agreement with Moosehorn, LLC, to perform services on 33 Moosehorn Road. Despite filing a separate mechanic's lien for each property, the plaintiff only sought $44,570.50 in total for the work that had been performed.

On March 22, 2010, the plaintiff filed a six count complaint against the defendants. Counts one and two sought the foreclosure of the mechanic's liens on 30 Moosehorn Road and 33 Moosehorn Road, respectively. Count three alleged breach of contract as to D.H. Williams, Inc. Count four alleged breach of contract against Moosehorn, LLC, and Parks. Counts five and six sounded in quantum meruit and unjust enrichment, respectively, as to all of the defendants.

A court trial took place on January 12, 19, 24 and 25, 2012. At the conclusion of closing arguments, the court in an oral decision rendered judgment in favor of the plaintiff on all counts of the defendants' counterclaim.[5] The court also rendered judgment in favor of the plaintiff on counts one and two of the complaint, which sought foreclosure of the mechanic's liens, count four, which alleged breach of contract against Moosehorn, LLC, and Parks, and count five, which alleged quantum meruit against all of the defendants. It rendered no judgment on count three, as it had been withdrawn during closing arguments, or on count six, which alleged unjust enrichment, as it was pleaded as an alternative to the contract claim. It found the value of services rendered to be $44,570.50, rendered judgment of strict foreclosure with respect to the mechanic's liens and awarded prejudgment interest at the rate of 10 percent.

---

[5] The counterclaim alleged breach of agreement, abuse of process, fraud and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

Thereafter, the court set law days to commence on April 23, 2012. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants claim that the court lacked subject matter jurisdiction to hear this matter because the two mechanic's liens filed by the plaintiff were invalid in that they failed to comply with the statutory requirements of General Statutes §§ 49-33 and 49-34. They argue that the mechanic's liens were invalid because the plaintiff improperly (1) liened each property for services that had been provided on the other property, (2) tacked successive owners and contracts together in an attempt to enlarge the commencement date of its mechanic's liens, (3) made sworn statements on the certificate of mechanic's liens that were false, (4) filed mechanic's liens against after-acquired property, and (5) filed the mechanic's liens more than ninety days after the plaintiff ceased its work. The defendants maintain that the failure to comply with the mechanic's lien statutory requirements renders the liens invalid and deprived the court of jurisdiction over the action to foreclose on the liens. Because the alleged violations do not implicate the subject matter jurisdiction of the court and the defendants did not properly raise these arguments to the trial court, we decline to review the merits of the defendants' claim.

"[T]he question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time." (Emphasis omitted; internal quotation marks omitted.) *Louis Gherlone Excavating, Inc.* v. *McLean Construction Co.*, 88 Conn. App. 775, 779–80, 871 A.2d 1057, cert. granted on other grounds, 274 Conn. 909, 876 A.2d 1201 (2005) (appeal withdrawn February 3, 2006). "Subject matter jurisdiction involves

the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . .

"Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. . . . [W]e have maintained the distinction between these concepts. See, e.g., *Artman* v. *Artman*, 111 Conn. 124, 130, 149 A. 246 (1930) ([i]f it applied any wrong rule of law to the situation, it was not acting without jurisdiction but in the erroneous exercise of its jurisdiction) . . . ." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–29, 724 A.2d 1084 (1999).

Although the defendants purport to challenge the jurisdiction of the court to render judgment in favor of the plaintiff on the mechanic's liens, in reality they are challenging whether the court properly exercised its authority given their assertion that the mechanic's liens were invalid. The appropriate avenue to challenge the validity of a mechanic's lien, however, is by way of a special defense. "Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction . . . *or, if there had never been a valid lien.* . . . The purpose of a special defense is to plead facts that are consistent with the allegations of the

complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both. . . . No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Louis Gherlone Excavating, Inc.* v. *McLean Construction Co.*, supra, 88 Conn. App. 781.

In the present case, there were no special defenses properly before the court when the trial commenced. See part IV of this opinion. Thus, the trial court did not consider whether the mechanic's liens were valid. The defendants are not allowed to challenge the validity of the mechanic's liens for the first time on appeal. "We have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . [T]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge. . . . Further . . . [t]he fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed . . . . The plaintiff, therefore, may not raise this argument for the first time on appeal." (Citations omitted; internal quotation marks omitted.) *Noonan* v. *Noonan*, 122 Conn. App. 184, 190–91, 998 A.2d 231, cert. denied, 298 Conn. 928, 5 A.3d 490 (2010). Because the court had subject matter jurisdiction to adjudicate the foreclosure of the plaintiff's

mechanic's liens and the defendants did not properly challenge the validity of the plaintiff's mechanic's liens before the court, we decline to review the merits of the defendants' claim.

## II

The defendants next claim that the court improperly found that the plaintiff had proven the damages elements on its breach of contract count. They argue that the only evidence presented by the plaintiff to support its damages calculations was exhibit 53, a document that did not provide a sufficient basis for estimating the amount of damages with reasonable certainty, and Lally's testimony related to that exhibit. We disagree.[6]

The following additional facts are relevant to our resolution of the defendants' claim. At trial, the plaintiff presented testimony from Lally regarding damages. Lally testified that the account for the project was current when Parks and Lally met in December, 2008, to discuss the submission of the application to the department. He further testified that the invoice dated March

---

[6] The defendants also appear to argue that the court improperly found in favor of the plaintiff on its breach of contract claim because the court found that Moosehorn, LLC, and Parks "stepped into the shoes of the ongoing agreement" with Williams and that the plaintiff continued to do work in accordance with the original agreement. They maintain that the complaint alleges that the breach of contract occurred in relation to the March, 2005 contract signed by Moosehorn, LLC, and Parks. They have not, however, provided us with a standard of review upon which to evaluate this claim and have cited to only one case that does not elucidate the issue that they attempt to raise. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008). Consequently, we decline to review this improperly briefed argument.

31, 2009, represented work that had been completed in the months of December, January, February and March, even though the invoice stated that the dates of service were from March 1 to 31, 2009, because he had not yet figured out how to modify the service dates generated by the computer program. Lally testified that the invoice total was $47,538 and that the invoice represented services for work performed pursuant to the 2005 update and for extra work done to prepare for the submission to the department. Lally also testified that the 2005 update did not include a budget for the department application.

Lally testified that he sent the March, 2009 invoice to Parks and that he received a response by Parks disputing the bill. In the letter from Parks, which was admitted as a full exhibit at trial, Parks questioned how Lally could have worked in one month the amount of hours that would have supported the bill, questioned whether payments had been credited, contested charges for what appeared to be duplicative work, and challenged charges over the original quote. Lally further testified that he replied by letter detailing why the charges were greater than those listed in the 2005 update. In that letter, also a full exhibit at trial, Lally noted that the scope of the project had increased from six lots to eight lots, which required additional work and the performance of services that had been designated as complete; that the preparation and submission of the application to the department was not included in the 2005 update; that additional mapping work was required because the mapping that existed in March, 2005, was later found to be inadequate or inaccurate; that the failure to obtain grading rights to abutters' properties resulted in extra time to calculate and design the road, prepare grading plans and design and draft erosion controls; that on several occasions Williams had requested changes to the plans that required additional work; that

site conditions as well as client changes made the design extremely complex; and that the fees in the 2005 update were no longer valid pursuant to a clause in the update. The letter also addressed Parks' other concerns, stating that the bill represented the work of three employees working more than four months, that the services were not duplicative, but represented work that had to be completed again for the various reasons that he had stated previously, and that, if Parks reviewed all of the previous invoices, he would see that different payment credits had been applied to different project numbers and, thus, all payments had been credited. After receiving Parks' letter, Lally testified that he reviewed the time slips that had been submitted for the project and performed a final reconciliation of the account. The July 8, 2009 invoice calculated the amount due to the plaintiff as $44,570.50. Lally testified that the July, 2009 invoice formed the basis for the amount sought in the mechanic's liens.

Lally also testified that he had prepared a document, admitted into evidence as exhibit 53, to demonstrate that not all of the work billed on the March, 2009 invoice was related to the department application. He explained that the document represented the charges billed in the March, 2009 invoice that corresponded to the tasks outlined in the 2005 update. Exhibit 53 listed seven items, the total amount of the contract price for each item, pursuant to the amounts found in the 2005 update, and the amount that had been previously billed for each item, pursuant to a statement of accounts that was also admitted as a full exhibit. Lally explained that the difference between the total contract amount and the total amount previously billed represented the amount due under the flat fee portion of the 2005 update that was billed on the March, 2009 invoice. He further explained that the difference between the mechanic's

lien amount and the March, 2009 flat fee billing represented extra work that was charged at an hourly rate.

"[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Thus, [t]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Citation omitted; internal quotation marks omitted.) *Duplissie* v. *Devino*, 96 Conn. App. 673, 699, 902 A.2d 30, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006).

Although the defendants claim that exhibit 53 and Lally's testimony related to that exhibit was the only evidence of the plaintiff's damages and that exhibit 53 did not provide a sufficient basis to support a calculation of damages, the record reveals that there was additional testimony by Lally, as well as exhibits on which the court could have relied in making its determination of damages. In addition to exhibit 53, which addressed only a portion of the March, 2009 invoice, the plaintiff submitted as exhibits Lally's letter to Parks explaining the charges on the March, 2009 invoice, the July, 2009 invoice and supporting time slips, and the statement of accounts, which showed all of the previous payments that Parks had made prior to the March, 2009 invoice. Moreover, Lally testified about the work that was performed after his meeting with Parks in December, 2008, about the way he calculated what was owed to the plaintiff and about the fact that the department application was not included in the 2005 update. Because there was sufficient evidence before the court to allow it to

estimate the amount owed to the plaintiff with reasonable certainty, the court's finding with respect to damages was not clearly erroneous.

### III

The defendants next claim that the court improperly found in favor of the plaintiff on the quantum meruit count because it previously had found in favor of the plaintiff on the breach of contract count. Although we agree that the court improperly found in favor of the plaintiff on the quantum meruit count with respect to D.H. Williams, Inc., Moosehorn, LLC, and Parks, we conclude that it was harmless error. We disagree with the defendants with respect to the court's finding as to DSBNC, LLC.

As previously noted, in the plaintiff's complaint, count four alleged breach of contract against Moosehorn, LLC, and Parks, and count five sounded in quantum meruit as to all of the defendants. In its oral memorandum of decision rendering judgment in favor of the plaintiff at the conclusion of trial, the court stated: "With respect to the factual underpinnings of this decision, the court finds that Mr. Lally was hired by Mr. Williams and his two nominees commencing in 2003. The court finds that (I'm using the personal names to include corporations when appropriate) when Mr. Parks stepped into the shoes of the ongoing agreement with Mr. Williams that Mr. Lally accepted that arrangement and proceeded to do work in accordance with the original contract between Williams and his nominees and additionally for Moosehorn Road, LLC, Mr. John Parks and eventually DSBNC, LLC.

"The court finds that the plaintiff gave ample warning of the difficulties with the road on the project, which the court finds to have included the property abutting the bulk of the proposed cul-de-sac. The court finds that the work done on 30 [Moosehorn Road] and 33

Moosehorn Road was at all times part and parcel of the same contract. The court finds that Mr. Lally has comported himself professionally and has done the work that he claims.

"The court finds its value to be the claimed amount of $44,570.50. The court also finds that its value would be [the same] if necessary for a quantum meruit recovery but enters no judgment on count six, since it is pleaded as an alternative to the contract claim."

Thereafter, the court issued an order rendering judgment of strict foreclosure in favor of the plaintiff on counts one and two, rendering judgment in favor of the plaintiff on counts four and five, noting that count three had been withdrawn during oral argument, and rendering no judgment on count six.

We begin with our standard of review and relevant legal principles. "As it is a question of law when a trial court determines whether an equitable doctrine of recovery is applicable in any particular case, we utilize a plenary standard of review." *David M. Somers & Associates, P.C.* v. *Busch*, 283 Conn. 396, 408, 927 A.2d 832 (2007).

"Quantum meruit is a doctrine allowing for recovery based upon common law principles of restitution, [and is a] noncontractual [action] by which a party may recover despite the absence of a valid contract . . . ." (Internal quotation marks omitted.) *300 State, LLC* v. *Hanafin*, 140 Conn. App. 327, 330, 59 A.3d 287 (2013). "[It is] available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered." (Internal quotation marks omitted.) *Parnoff* v. *Mooney*, 132 Conn. App. 512, 519, 35 A.3d 283 (2011). "The lack of a remedy under a contract is a precondition to recovery

based on unjust enrichment or quantum meruit." (Internal quotation marks omitted.) *300 State, LLC* v. *Hanafin*, supra, 330. Thus, "[a] party may not recover the reasonable value of services rendered, pursuant to the doctrine of quantum meruit, when the actions for which it seeks relief were governed by an express contract." *David M. Somers & Associates, P.C.* v. *Busch*, supra, 283 Conn. 408.

Although "a party cannot be held liable simultaneously for breach of an express contract and an implied in law contract governing the same subject matter . . . [a] judgment in favor of a party on both an express and an implied in law contract . . . does not constitute reversible error in every instance." (Citations omitted; internal quotation marks omitted.) *300 State, LLC* v. *Hanafin*, supra, 140 Conn. App. 331. If there is sufficient evidence to support a judgment under either theory and the plaintiff does not receive a double recovery, the court will conclude that the error was harmless. Id., 331–32.

In the present case, the court found in favor of the plaintiff on the breach of contract count as to Moosehorn, LLC, and Parks. Thus, the defendants are correct in their assertion that the court improperly found in favor of the plaintiff on the quantum meruit count with respect to Moosehorn, LLC, and Parks. The court, however, did not provide the plaintiff with a double recovery, rendering judgment in the amount of $44,570.50. Moreover, on the basis of our review of the record, there was sufficient evidence to support a judgment under either theory. With respect to Moosehorn, LLC, and Parks, we conclude that the court's ruling on the breach of contract and quantum meruit claims was not reversible error because it is harmless.

With respect to D.H. Williams, Inc., the court found that there was a contract between the plaintiff and D.H.

Williams, Inc. Because the court found that the actions for which the plaintiff sought relief were governed by an express contract, the defendants are correct in asserting that the court should not have found in favor of the plaintiff with respect to D.H. Williams, Inc., on the quantum meruit count. For the same reasons as we previously stated, however, we conclude that the court's ruling on the quantum meruit count as to D.H. Williams, Inc., was not reversible error.

With respect to DSBNC, LLC, the court found that Parks stepped into the shoes of Williams, thus giving rise to an implied contract between the plaintiff and DSBNC, LLC, because Parks was the sole member of DSBNC, LLC. On the basis of the court's implicit finding that an implied contract existed between the plaintiff and DSBNC, LLC, the court did not err in finding in favor of the plaintiff on the quantum meruit count with respect to DSBNC, LLC. Accordingly, the defendants' claim fails.

## IV

The defendants next claim that the court erred in its rulings on the defendants' amendments to their answer, special defenses and counterclaim. They maintain that the court improperly granted the plaintiff's motion to strike their third amended answer, special defenses and counterclaim because their special defenses and counterclaim were legally sufficient and because the court overlooked their request for leave to amend that had been filed. The defendants also claim that the court improperly denied their request for leave to amend their fourth amended answer, special defenses and counterclaim. Because the defendants waived their right to appeal from the court's granting of the plaintiff's motion to strike their third amended answer, special defenses and counterclaim by filing a fourth amended answer, special defenses and counterclaim, we do not address

their challenge to the court's granting of the plaintiff's motion to strike. Additionally, we are not persuaded that the court abused its discretion in sustaining the plaintiff's objection to the defendants' fourth amended answer, special defenses and counterclaim.

The following additional procedural history is necessary for our resolution of this claim. After the plaintiff filed its complaint, DSBNC, LLC, subsequently filed motions to discharge the mechanic's liens. At a hearing on the motions, the parties agreed to have the matter placed on the expedited trial list, and the trial was scheduled to begin on January 12, 2011. On December 9, 2010, one month before trial was scheduled to commence, Moosehorn, LLC, and DSBNC, LLC, filed a motion for a continuance requesting additional time to resolve certain issues that had been revealed during discovery. The same day, the court granted the defendants' motion and scheduled trial to commence on July 12, 2011.

Parks filed an answer, special defenses and counterclaim on behalf of DSBNC, LLC, D.H. Williams, Inc., and Moosehorn, LLC (LLC defendants). The answer contained eight special defenses and an eight count counterclaim.[7] He subsequently filed an identical answer, special defenses and counterclaim on his own behalf. The plaintiff filed a motion to strike addressed

---

[7] The defendants asserted as special defenses: (1) unclean hands, (2) improper tacking of successive contracts, (3) improper blanket mechanic's liens, (4) the failure to allocate the amount due between the two properties, (5) invalid liens due to improper service, and the failure to attach the mechanic's lien and return of service to the complaint, (6) failure to have consent or agreement, (7) improper lien on after-acquired property, and (8) fraudulent misrepresentations of fact in the mechanic's liens. The eight count counterclaim sounded in (1) misrepresentation and breach of agreement, (2) slander of title, (3) abuse of process, (4) vexatious suit, (5) fraud, (6) interference with business expectations, (7) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and (8) civil conspiracy.

both to the LLC defendants' and Parks' answers, moving to strike all eight of their special defenses and counts two through eight of the counterclaim as being legally insufficient because the special defenses provided only legal conclusions and because the counterclaim failed to state causes of action.

The LLC defendants thereafter filed an amended answer, special defenses and counterclaim in which they revised and expanded their special defenses.[8] The same day that the LLC defendants filed their amended answer, special defenses and counterclaim, Moosehorn, LLC, filed an objection to the plaintiff's motion to strike. It argued that the amended special defenses superseded the original special defenses and rendered the motion to strike moot. It further argued that the allegations in the counterclaim were against the plaintiff, not only for its own actions, but also for the actions of its agents. The

---

[8] As to count one, the LLC defendants asserted as special defenses (1) that the court lacked subject matter jurisdiction because the mechanic's lien on 30 MooseHorn Road was invalid due to the plaintiff's failure to comply with § 49-33, known as the mechanic's lien statute, in that (a) the lien was filed against an entity that was not an owner of the property, (b) the owner of the property at the time the lien was filed did not have an agreement with the plaintiff to provide services for the property, (c) the lien violated the rule against tacking successive owners to enlarge the time for filing a lien and the rule against liens on after-acquired property, (d) the lien failed to allocate the amount due for work performed on 30 Moosehorn Road only, (e) the lien was improperly served on an agent who had been deceased since 2002 and (f) the lien was filed more than ninety days after the cessation of work, and (2) that count one was legally insufficient because the complaint did not have attached to it the agreement between the parties, a copy of the mechanic's lien and the return of service. As to count two, the LLC defendants asserted as special defenses that the court lacked subject matter jurisdiction because the mechanic's lien on 33 Moosehorn Road was invalid due to the plaintiff's failure to comply with the mechanic's lien statute in that the lien failed to allocate the amount due for work performed on 33 Moosehorn Road only and that count two was legally insufficient because the complaint did not have attached to it the agreement between the parties, a copy of the mechanic's lien and the return of service. Finally, the LLC defendants asserted as to all counts that the plaintiff had unclean hands.

plaintiff responded, arguing that the amended answer, special defenses and counterclaim were improperly filed and did not supersede the original answer, special defenses and counterclaim. Thus, it renewed its motion to strike the original answer, special defenses and counterclaim of the LLC defendants and Parks.

After oral argument, the court granted in part the plaintiff's motion to strike. In its order dated April 4, 2011, the court stated: "Motion to strike all special defenses is granted. Motion is granted to strike counterclaims 2, 4, 6, and 8; motion to strike counterclaims 3, 5, and 7 is denied. Defendant's amended answer with amended special defenses and counterclaims is not properly filed. It must be requested to be filed and the request granted by a court for it to be [c]onsidered by the court." Thus, the remaining counts of the counterclaim were breach of agreement, abuse of process, fraud and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

Following the court's order, Moosehorn, LLC, and DSBNC, LLC, filed a request for leave to amend their answer, special defenses and counterclaim as well as a second amended answer, special defenses and counterclaim.[9] After the plaintiff moved to strike all of the special defenses and counts one, two, three, four and eight of the counterclaim, Moosehorn, LLC, and DSBNC, LLC, withdrew their second amended answer, special defenses and counterclaim.

On May 25, 2011, seven weeks before the rescheduled trial was due to begin on July 12, 2011, DSBNC, LLC,

[9] The only change was to the counterclaim. The second amended counterclaim sounded in (1) breach of agreement, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud based on the actions of the plaintiff, (4) civil conspiracy, (5) abuse of process, (6) fraud based on the actions of the plaintiff's agents, (7) a violation of CUTPA, and (8) a violation of the Connecticut Antitrust Act, General Statutes § 35-24 et seq.

Moosehorn, LLC, and Parks filed a third amended answer, special defenses and counterclaim. They asserted seven special defenses as to count one, two special defenses as to count two and two special defenses as to all counts.[10] DSBNC, LLC, Moosehorn, LLC, and Parks also altered their counterclaim from the second amended answer, special defenses and counterclaim. They removed counts alleging a violation of the Connecticut Antitrust Act, General Statutes § 35-24 et seq., and civil conspiracy. They added a count for civil conversion. Thus, the counterclaim alleged (1) breach of agreement, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud by nondisclosure, (4) abuse of process, (5) fraud by misrepresentation, (6) a violation of CUTPA, and (7) civil conversion.

Thereafter, the plaintiff filed a motion to strike all of the special defenses and counts one, two, three and seven of the counterclaim, asserting that they were

---

[10] As to count one, DSBNC, LLC, Moosehorn, LLC, and Parks asserted (1) that the court lacked subject matter jurisdiction because the mechanic's lien on 30 Moosehorn Road was invalid due to the plaintiff's failure to comply with § 49-33, known as the mechanic's lien statute, in that (a) the lien was filed against an entity that was not an owner of the property, (b) the owner of the property at the time the lien was filed did not have an agreement with the plaintiff to provide services for the property and, (c) the lien violated the rule against liens on after-acquired property; and (2) that the lien was invalid because it (a) violated the rule against tacking successive owners to enlarge the time for filing a lien, (b) failed to allocate the amount due for work performed on 30 Moosehorn Road only, (c) was filed more than ninety days after the cessation of work, and (d) was improperly served on D.H. Williams, Inc., because its agent had been deceased since 2002. As to count two, DSBNC, LLC, Moosehorn, LLC, and Parks asserted that the court lacked subject matter jurisdiction because the mechanic's lien on 33 Moosehorn Road was invalid due to the fact that the lien violated the rule against liens on after-acquired property and that the lien amount was excessive because it included the total amount due on both 30 Moosehorn Road and 33 Moosehorn Road. As to the special defenses as to all counts, they asserted that the plaintiff had unclean hands due to ethics violations and that the plaintiff was barred from recovering on any agreements between itself and the defendants because the plaintiff had not acquired the certificate of registration, as is required by statute.

legally insufficient. Nearly one month after filing its third amended answer, special defenses and counterclaim, on June 21, 2011, DSBNC, LLC, Moosehorn, LLC, and Parks filed a request for leave to amend their answer, special defenses and counterclaim and attached the previously filed third amended answer, special defenses and counterclaim.

At oral argument on June 27, 2011, the plaintiff's counsel noted that the request for leave to amend was filed after the plaintiff had filed its motion to strike. He questioned whether the subsequent pleading would be problematic and whether the parties could proceed with oral argument given that the trial was scheduled to commence in two weeks. The court, *Aurigemma, J.*, indicated that it would hear argument, especially because trial was impending. The plaintiff's counsel then argued that allowing the special defenses and counterclaim would substantially change the case and require additional discovery two weeks before trial. He conceded that some of the special defenses and counts of the counterclaim had been previously pleaded and stricken, but maintained that they were not legally sufficient. The defendants' counsel argued that the special defenses and counterclaim were legally sufficient and that only one count, civil conversion, had not been pleaded previously. On July 8, 2011, four days before the trial was scheduled to begin, the court, *Graham, J.*, rescheduled the trial date to November 9, 2011, because Judge Aurigemma had not yet ruled on the motion to strike.

Judge Aurigemma granted the motion to strike on September 1, 2011.[11] In the memorandum of decision,

[11] The court file indicates that Judge Aurigemma entered an order granting the plaintiff's motion to strike the defendants' third amended answer, special defenses and counterclaim on June 27, 2011. That order, however, references her September 1, 2011 memorandum of decision. Although the plaintiff notes the order in its counterstatement of the facts, none of the parties rely on the June 27, 2011 order in their argument on this issue.

she noted that the court previously had granted the plaintiff's motion to strike the defendants' original answer, special defenses and counterclaim and that the order required the defendants to file a request to amend in order for any amended answer, special defenses and counterclaim to be considered properly filed. She also noted that Practice Book § 10-60 provides the procedure for amending pleadings. She concluded that on "May 5, 2011, defendants John H. Parks, Moosehorn Road, LLC, and DSBNC, LLC, filed the Third Amended Answer, Special Defenses and Counterclaims without following the procedure set forth in Practice Book § 10-60 and in direct contravention of the aforementioned Order of this court. Therefore, the Third Amended Answer, Special Defenses and Counterclaims are ordered stricken, and the defendants must file a motion to amend (to be ruled upon by the court) or a request to amend (to be ruled upon by the court if the plaintiff timely objects) in the event they wish to replead."

On September 8, 2011, the defendants filed a request for leave to amend their answer, special defenses and counterclaim and attached a fourth amended answer, special defenses and counterclaim. The special defenses and counterclaim set forth in the fourth amended answer, special defenses and counterclaim were identical to the ones set forth in the third amended answer, special defenses and counterclaim.

The plaintiff filed an objection two weeks later. It asserted that the parties had elected an expedited trial date in lieu of a discharge hearing and that the matter twice had been continued due to the defendants' delay. The plaintiff further asserted that the second continuance was due to the defendants' delayed filing of their third amended answer, special defenses and counterclaim. It averred that at the trial management conference that had been held on July 6, 2011, one week prior to the commencement of trial, the trial was rescheduled

for November 9, 2011, because the defendants' third amended answer, special defenses and counterclaim had not yet been ruled upon by the court. The plaintiff maintained that the defendants had filed their fourth amended answer, special defenses and counterclaim seven weeks before the commencement of the November 9, 2011 trial date and that to allow the amendment at that time would result in inevitable delay and postponement of the trial. Because, the plaintiff argued, it had "spent a great amount of time and resources towards addressing the repeated attempts by the defendants to amend the pleadings and/or delay the commencement of trial in this case," it asked the court to sustain its objection.

The defendants filed a response to the plaintiff's objection to their request for leave to amend their answer, special defenses and counterclaim. They averred that their counsel at that time had entered an appearance on April 27, 2011, and that a request for leave to amend and a third party complaint were pending when he entered his appearance. They asserted that the third amended answer, special defenses and counterclaim was filed on May 25, 2011, to "in effect [clean] up prior pleadings filed by prior counsel" and that the request for leave to amend the third amended answer, special defenses and counterclaim was filed to address the procedural error raised by the plaintiff in its motion to strike. They maintained that the September 1, 2011 order granting the plaintiff's motion to strike did not take into account the fact that the defendants had filed a request for leave to amend on June 2, 2011, and that the trial date should be delayed.

The defendants additionally argued that the fourth amended answer, special defenses and counterclaim was identical to the third amended answer, special defenses and counterclaim and that the plaintiff had been on notice of the issues raised in those pleadings

since they were filed. They argued that all of the relevant witnesses, including Williams, who was the primary witness for all of the allegations for the special defenses and counterclaim, had been deposed, such that there was no undue advantage with respect to discovery. The defendants maintained that they should not be held to a disadvantage because the plaintiff's motion to strike the defendants' third amended answer, special defenses and counterclaim was not decided in a timely manner. They asked the court to overrule the plaintiff's objection and to not penalize them because of the "heavy burden the trial court bears with respect to recent cutbacks." The court sustained the plaintiff's objection on October 14, 2011.

A

The defendants claim that Judge Aurigemma improperly granted the plaintiff's motion to strike their third amended answer, special defenses and counterclaim because she ignored the fact that they had filed a request for leave to amend their answer and because the special defenses and counterclaim were legally sufficient. We conclude that the defendants waived their right to challenge this ruling.

Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading . . . ." This court has stated that "[a]fter a court has granted a motion to strike, [a party] may either amend his pleading or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as] [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." (Internal quotation marks omitted.) *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, 128 Conn. App. 84, 90, 15 A.3d 1163 (2011). Stated another

way: "When an amended pleading is filed, it operates as a waiver of the original pleading. The original pleading drops out of the case and although it remains in the file, it cannot serve as the basis for any future judgment, and previous rulings on the original pleading cannot be made the subject of appeal." *Wilson* v. *Hryniewicz*, 38 Conn. App. 715, 719, 663 A.2d 1073, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995).

In the present case, the defendants filed their third amended answer, special defenses and counterclaim. The plaintiff filed a motion to strike their special defenses and counterclaim, and Judge Aurigemma granted the motion. One week later, the defendants filed a fourth amended answer, special defenses and counterclaim to comply with Judge Aurigemma's order. By exercising their rights pursuant to Practice Book § 10-44 and filing an amended answer, special defenses and counterclaim within fifteen days of the granting of a motion to strike, the defendants waived their right to claim that the court erred in granting the motion to strike. See *Caltabiano* v. *L & L Real Estate Holdings II, LLC*, supra, 128 Conn. App. 90–91.

B

The defendants also argue that the court's ruling sustaining the plaintiff's objection to the defendants' fourth amended answer, special defenses and counterclaim was improper. We disagree.

The following standard of review and legal principles guide our review of this claim. "A trial court's ruling on a motion of a party to amend its [pleading] will be disturbed only on the showing of a clear abuse of discretion. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear

abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion. . . .

"Under the statutes and rules of practice, the court may in its discretion, in a proper case, allow the filing of amendments to pleadings before, during and after trial. . . . Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial. . . . The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case." (Citations omitted; internal quotation marks omitted.) *Mastrolillo* v. *Danbury*, 61 Conn. App. 693, 696, 767 A.2d 1232 (2001).

In the present case, the defendants' answer, special defenses and counterclaim twice had been stricken due to their failure to follow the procedure properly for amending a pleading. The matter had been placed on the expedited trial list and originally scheduled for trial on January 12, 2011. The case had been continued once because the defendants sought extra time for discovery and a second time because the defendants had filed their third amended answer, special defenses and counterclaim seven weeks before the trial date that previously had been rescheduled at their request. When the defendants filed their fourth amended answer, special defenses and counterclaim on September 8, 2011, trial was scheduled to commence on November 9, 2011, only two months later. Moreover, the defendants sought a delay of the trial date should the amendment be allowed. Given these facts before the court, it was not an

abuse of discretion for the court to sustain the plaintiff's objection to the defendants' fourth amended answer, special defenses and counterclaim.

V

The defendants claim that in three instances the court improperly ruled that evidence of the plaintiff's ethical violations was irrelevant. Because in their brief the defendants failed to address the issue of harmfulness in connection with this claim, we decline to review this inadequately briefed claim.

In their brief, the defendants argue that the court improperly granted the plaintiff's motion to quash the subpoenas duces tecum directed to Lally and two of the plaintiff's employees and sustained, on the ground of relevancy, the plaintiff's two objections when the defendants attempted to introduce evidence of the plaintiff's purported ethical violations. Although the defendants detailed what the evidence was and why they thought it was relevant, their only statement as to harmfulness was that "[t]he exclusion of this evidence was harmful to the Defendant."

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Deegan* v. *Simmons*, 100 Conn. App. 524, 528, 918 A.2d 998, cert. denied, 282 Conn. 923, 925 A.2d 1103 (2007). "Furthermore, [b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . In the absence of a showing that the [excluded] evidence would have affected the final

result, its exclusion is harmless." (Internal quotation marks omitted.) *Desrosiers* v. *Henne*, 283 Conn. 361, 366, 926 A.2d 1024 (2007).

Although the defendants did argue that the court erred in excluding the evidence, they wholly failed to brief how the alleged error was harmful. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005). Because the defendants have failed to adequately brief this claim, we decline to afford it review. See id.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.